**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**CELESTE HANSHAW,**

      **Plaintiff,**

                                           **Civil Action 2:14-cv-1464**

   **v.**                                     **Judge James L. Graham**

                                           **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

      Plaintiff, Celeste Hanshaw, who is proceeding without the assistance of counsel, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 15), Plaintiff's Reply (ECF No. 16), and the administrative record (ECF No. 7).  For the reasons that follow, it is

**RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

# I.  BACKGROUND[1]

Plaintiff, Celeste Hanshaw, protectively filed her application for Disability Insurance Benefits on September 6, 2011, and subsequently protectively filed an application for Supplemental Security Income on October 27, 2011.  In both applications, Plaintiff alleged a disability onset date of July 17, 2008.  Plaintiff's application was denied initially and upon reconsideration.  (R. at 124, 127.)  Plaintiff sought a *de novo* hearing before an administrative law judge.

Administrative Law Judge Timothy G. Keller ("ALJ") held a hearing on November 26, 2013, at which Plaintiff, represented by counsel, appeared and testified.  (R. at 37-55.)  Lynne Kaufman, a vocational expert, also appeared and testified at the hearing.  On December 13, 2013, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 12-29.)  On July 8, 2014, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1-3.)  Plaintiff then timely commenced the instant action.

In her Statement of Errors, Plaintiff appears to assert that the Commissioner should consider her new medical records and her current course of treatment.  She attaches a partial radiology report dated January 21, 2015, and notes that she is currently receiving physical therapy, that she uses a TENS unit, and that she has been treated with a "traction machine."  (Pl.'s Statement of Errors 2, ECF No. 13.)  Plaintiff next lists a number of diagnoses.  Finally,

---

[1]For the sake of brevity, the Undersigned provides a brief outline of the procedural history and will discuss the record evidence as necessary to address Plaintiff's contentions of error within the Analysis Section.

2

Plaintiff represents that she did not fly or drive to Florida and that she is not currently on pain medications.

In her Memorandum in Opposition, the Commissioner posits that substantial evidence supports the ALJ's non-disability finding.  The Commissioner further asserts that remand for consideration of new evidence is not appropriate given that the evidence at issue is cumulative and immaterial.

In her Reply, Plaintiff states that her "[f]irst disagreement is the fact that the Commissioner . . . sent her personal information to a prisoner . . . ."  (Pl.'s Reply 1, ECF No. 16.)  She states that her "[s]econd disagreement is her diagnoses," adding that the Court needs to research and understand her conditions.  (*Id.*)  She also asks the Court to explain why Dr. Khan, her treating psychologist, is not an acceptable medical source.  Plaintiff further asserts that she is not a drug seeker, and as of July 27, 2015, she "will be celebrating narcotic free."  (*Id.*)  She reiterates that she has not flown to Florida to visit her parents.  Finally, Plaintiff again states that she has been receiving ongoing treatment and questions why a decision would be rendered without consideration of her more recent medical records.

## II.    THE ADMINISTRATIVE DECISION

At step one of the sequential evaluation,[2] the ALJ found that Plaintiff had not

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or

engaged in substantial gainful activity since alleged onset date of July 17, 2008, the original

alleged onset date of disability.  At step two, the ALJ found that Plaintiff had the following

severe impairments during the relevant period: neck, back, fibromyalgia, bipolar disorder,

anxiety, depression, and prescription drug abuse.  (R. at 15.)  The ALJ further found that

Plaintiff did not have an impairment or combination of impairments that met or medically

equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional

capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that [Plaintiff]
> had the residual functional capacity to perform light work as defined in 20 CFR
> 404.1567(b) and 416.967(b) except that [Plaintiff] may no climb ladders, ropes, or
> scaffolds.  She may not Crawl. [Plaintiff] is capable of understanding, carrying out
> and remembering simple to moderately complex instruction and can sustain attention
> and concentration for two hour segments over an eight hour work period.  She is able
> to respond appropriately to supervisors and co-workers in a task oriented setting
> where contact with others is casual and infrequent.  She is able to adapt to simple
> changes and avoid hazards in a setting without strict production demands or quotas.

(R. at 17).  In formulating this RFC, the ALJ found Plaintiff's allegations concerning both her

mental and physical impairments to be less than credible.

---

       equal the criteria of an impairment set forth in the Commissioner's Listing of
       Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.     Considering the claimant's residual functional capacity, can the claimant
       perform his or her past relevant work?

5.     Considering the claimant's age, education, past work experience, and residual
       functional capacity, can the claimant perform other work available in the national
       economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Relying on the VE's testimony, the ALJ concluded that Plaintiff can perform jobs that exist in significant numbers in the state and national economy.  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act.

## III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and

where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.   ANALYSIS

The Undersigned finds each of Plaintiff's contention of errors to be without merit and considers each in turn.

### A.   Plaintiff's New Medical Records and Recent Treatment

Neither Plaintiff's alleged recent medical treatment nor the records she attached to her briefing are grounds for remand.  Sentence six of 42 U.S.C. § 405(g) provides in relevant part as follows:

> The Court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42. U.S.C. § 405(g).  "Sentence-six remands may be ordered in only two situations: where the Secretary requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency."  *Shalala v. Schaefer*, 509 U.S. 292, 297 n.2 (1993) (citations omitted).  The requirements that the evidence be "new" and "material," and that "good cause" be shown for the failure to present the evidence to the ALJ have been defined by the United States Court of Appeals for the Sixth Circuit as follows:

> "For the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.' . . . Such evidence is 'material' only if there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'  . . .  A claimant shows 'good cause' by

6

demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ . . . .  [T]he burden of showing that a remand is appropriate is on the claimant."

*Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)).

In the instant case, Plaintiff attached to her Statement of Errors partial radiology reports of computed tomography ("CT") scans of her lumbar spine and cervical spine dated January 21, 2015.  (ECF No. 13 at p. 3–4.)  She attached these same reports to her Reply, as well as a diagnostic assessment update that a counselor completed in March 2014.  Although Plaintiff failed to argue materiality, review of the additional evidence she attached to her briefing reveals that she could not have shown a "reasonable probability" that the Secretary would have reached a different conclusion on the issue of disability if presented with the additional evidence for several reasons.  *See Ferguson*, 628 F.3d at 276.

First, as the Commissioner points out, Plaintiff's alleged recent treatment and the evidence she attaches to her briefing post-date the relevant time period.  Thus, her treatment and records are not probative of Plaintiff's condition during the relevant time period.  *See Casey v. Sec'y of HHS*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("The rest of the material contained in the additional evidence pertains to a time outside the scope of our inquiry."); *see also McCracken v. Comm'r of Soc. Sec.*, No. 1:08–CV–327, 2009 WL 2983049, at *3 (S.D. Ohio Sept. 14, 2009) ("[M]edical evidence obtained after Plaintiff's insurance status expired is not relevant, except perhaps to the extent that it relates back to the covered period." (internal citation omitted)).

Second, the January 2015 CT scan of her cervical spine that Plaintiff attached is not material because it is cumulative of the 2010 and 2012 MRIs of Plaintiff's cervical spine that the

ALJ considered.  *See Elliot v. Apfel*, 28 F. App'x 420, 424 (6th Cir. 2002) (holding that within the context of considering a remand under sentence six, "[n]ew evidence must be new; it cannot be cumulative of evidence already in the record"); *see also Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 654 (6th Cir. 2009) (finding that the ALJ and district court properly rejected cumulative evidence as not material); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 598 (6th Cir. 2005) (affirming district court's finding that remand was not warranted where the new IQ test submitted was "largely cumulative of evidence and opinions already present in the record"). The portion of the 2015 CT scan Plaintiff submitted showed "[s]traightening of the normal lordotic curvature of the cervical spine, which may be degenerative, positional, or due to muscle spasm" and "mild left foraminal narrowing."  (ECF No. 13 at p. 4.)  As the ALJ noted in his decision, the June 2012 MRI similarly revealed a "chronic straightening of the cervical lordosis without sublauxation," as well as "moderate bilateral foraminal narrowing."  (R. at 660, 26.) Similarly, the 2015 CT scan of Plaintiff's lumbar spine showed only minor degenerative disc changes and facet arthrosis, a condition that the ALJ considered within his decision.  (*See* R. at 15 (noting that "[t]he evidence demonstrates that [Plaintiff] has . . . significant degenerative joint disease of the hips and degenerative disc disease of the spine . . . .").)

Finally, the records Plaintiff submits are not material because they offer no basis for changing the ALJ's decision.  Within his decision, the ALJ considered Plaintiff's back impairments and included both exertional and postural limitations in the RFC to address the symptoms he found credible.  The Undersigned is unable to discern how the results of the January 2015 MRIs would necessitate a finding that Plaintiff was more limited than the ALJ determined.  The March 2014 diagnostic assessment update completed by a counselor that

Plaintiff attached to her Reply likewise fails to show that Plaintiff is more limited than the ALJ opined.  As set forth above, the ALJ found that Plaintiff had the severe impairments of bipolar disorder, anxiety, and depression and included limitations within his RFC determination to accommodate these mental impairments.  The 2014 diagnostic assessment update simply lists a number of diagnoses based upon Plaintiff's self-reported diagnoses.  The ALJ, however, determined in his decision that Plaintiff's self-reports were not credible.  Regardless, such a listing of diagnoses does not require the conclusion that Plaintiff is more limited than the ALJ opined because it offers no insight into the degree of impairment that these conditions may have caused.  *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of [the condition] . . . says nothing about the severity of the condition." (citation omitted)).

        In sum, because Plaintiff cannot demonstrate that there is a reasonable probability that the Commissioner would have reached a different disposition of her disability claim in light of her recent treatment and new medical records, it is **RECOMMENDED** that her first contention of error be **OVERRULED**.

**B.      Credibility Assessment**

        Plaintiff next appears to challenge the ALJ's credibility assessment.  In both her Statement of Errors and her Reply, she emphasizes that she did not travel to Florida and that she is not currently on pain medications.  In her Reply, she represents that she has never been a drug seeker.  The Undersigned finds that substantial evidence supports the ALJ's credibility assessment.

         The Sixth Circuit has provided the following guidance in considering an ALJ's credibility assessment:

9

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers*, 486 F.3d at 247.

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). This deference extends to an ALJ's credibility determinations "with respect to [a claimant's] subjective complaints of pain." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir.1987)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29,

2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review.").

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531.  In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication.  20 C.F.R. § 404.1529(c)(3); SSR 96–7p, 1996 WL 374186 (July 2, 1996); *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011) (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision) (Report and Recommendation later adopted).

On a related note, cases involving fibromyalgia "place[] a premium . . . on the assessment of the claimant's credibility."  *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003).  This is because "unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs."  *Rogers*, 486 F.3d at 243.  "Nonetheless, a *diagnosis* of fibromyalgia does not automatically entitle [a claimant] to disability benefits . . . ."  *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (emphasis in original) (citing *Sarchet v. Chater*, 78 F.3d 305, 306–07 (7th Cir.1996) ("Some people may have a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [claimant] is one of the minority.") (citations omitted)).  Accordingly, in cases involving fibromyalgia, an ALJ must assess Plaintiff's

credibility and "decide . . . if the claimant's pain is so severe as to impose limitations rendering her disabled."  *Swain*, 297 F. Supp. 2d at 990.

In the instant action, the ALJ offered *numerous* good reasons for discounting Plaintiff's credibility, including her inconsistent statements, her failure to report her pain medication usage to various providers, her activities of daily living, the unremarkable findings during physical examinations, the mild findings on diagnostic tests, and his own observations of her during the administrative hearing.  (*See* R. at 15-27.)  Thus, even if the Court assumed *arguendo* that the record demonstrates that Plaintiff did not travel to Florida and that she never abused drugs, the ALJ's credibility determination remains supported by substantial evidence such that his decision must be upheld.  *See Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013) (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012)) ("[E]ven if an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it.").

Nevertheless, the record supports that ALJ's findings with regard to her travel.  The ALJ found that Plaintiff's visit to Florida and going shopping on Black Friday undermined her allegations that she only left her home to go to church and was unable to drive more than five minutes in a car because she suffered from severe social phobia and panic attacks in crowds.  (R. at 16.)  Consistent with the ALJ's findings, Plaintiff reported to Dr. Stephen Morgenstern, M.D., her primary care physician, that she had been out shopping at the Black Friday sales.  (R. at 417.)  In addition, in April 2009, Plaintiff reported to Dr. Morgenstern that she had been "[d]oing a lot of driving helping her parents move down to Florida."  (R. at 424.)  Finally, in July 2011,

Plaintiff represented to her pain management physician that she had recently driven to Florida to see her mother.  (R. at 580.)

The record likewise supports the ALJ's notation that Plaintiff had abused prescription drugs.  As the ALJ noted and Plaintiff did not dispute, Plaintiff has a history of hospitalization for detoxification from opiate pain medications.  (*See* R. at 437-439 (hospitalized for six days for detoxification and diagnosed with polysubstance dependence); R. at 859-97 (admitted for four days for detoxification)).  In addition, in October 2008, Dr. Morgenstern noted that Plaintiff was taking her Vicodin pain medication four times per day rather than the two or three times a day he prescribed.  (R. at 429.)  In December 2008, Plaintiff reported that she had run out of her pain medications because she lost them and was afraid she was going through withdrawal.  (R. at 427.)  Later that same month, Plaintiff requested more pain medication and reported that she was now going to lock her pain medications in a lock box.  (R. at 426.)  In April 2009, Plaintiff reported using more pain medication that she had been prescribed because she had dental work.  (R. at 423.)  In July 2009, Plaintiff reported that she ran out of her pain medications early and needed more because she she hurt her achilles tendon.  (R. at 421.)  In September 2009, Plaintiff asked for early refills on her pain medications because someone reportedly stole her medications while she was at the airport.  (R. at 420.)  In December 2009, Plaintiff reported that she had taken more pain medications than he had prescribed because a large woman passed out and landed on top of her and had a seizure.  (R. at 417.)  Dr. Morgenstern agreed to a "short course" of more pain medication, but declared that "[t]here will be no further narcotic prescriptions through this office for [Plaintiff]" and instructed her to see a pain specialist.  (*Id*.)  He noted that in roughly three weeks time, Plaintiff had used one-hundred pain pills.  Dr. Warren Stearns,

M.D., who took over Plaintiff's pain medication management, noted in June 2013, that Plaintiff was not consistent and that she was "clearly drug seeking."  (R. at 926.)  Finally, in August 2012, Plaintiff tested positive for ampheteamine, a drug that Plaintiff had not even been prescribed.  (R. at 703.)

In sum, it is **RECOMMENDED** that the Court decline to disturb the ALJ's credibility assessment and **OVERRULE** Plaintiff's second contention of error.

## C.     Issues Plaintiff Raises in her Reply

In her Reply, Plaintiff advances two additional challenges.  The Undersigned recommends that the Court disregard these additional arguments because Plaintiff raised them for the first time in her Reply.  *See, e.g., Am. Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004) (noting that the court has consistently held that it will not consider arguments raised for the first time in reply).  Regardless, the Undersigned notes that Plaintiff's additional challenges lack merit.

As set forth above, Plaintiff states in her Reply that her "[f]irst disagreement is the fact that the Commissioner . . . sent her personal information to a prisoner . . . ."  (Pl.'s Reply 1, ECF No. 16.)  Based upon Plaintiff's representations, it appears that the Clerk inadvertently mailed a document containing her personal information to an inmate.  Plaintiff further represents that this inmate sent her correspondence and called her phone number so many times that she was forced to work with the prison to have the phone number blocked.  She represents that given that this inmate now knows where she lives, she fears that her and her family's lives are endangered. Although the Court is sympathetic to the issues that have arisen due to the Clerk's error, it is not

a basis for reversing the Commissioner's decision.  The Court notes that Plaintiff is free to contact local law enforcement to address the issues she is experiencing.

Plaintiff states that her "[s]econd disagreement is with [her] diagnoses" and questions why Dr. Khan, her treating psychologist, is not an acceptable medical source.  (*Id*.)  She appears to be referring to the diagnoses reflected in the 2014 diagnostic assessment update she attached to her Reply and the Commissioner's notation in its Memorandum in Opposition that the counselor filling out the diagnostic assessment is not an "acceptable medical source" as contemplated under the Social Security Administration's regulations, (Def.'s Mem. in Opp. 15, ECF No. 15).  As noted above, a listing of diagnoses does not require the conclusion that Plaintiff is more limited than the ALJ opined because diagnoses "say[] nothing about the severity of the condition." *Higgs*, 880 F.2d at 863.  Moreover, the Commissioner correctly points out that counselors are not acceptable medical sources as contemplated under the regulation and that evidence from an acceptable medical source is required to establish a medically determinable impairment.  20 C.F.R. § 404.1513.  Finally, as discussed above, the 2014 diagnostic assessment update does not constitute new, material evidence warranting remand.  Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's final contention of error in the event it is not considered waived.

## V.   CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VI.    PROCEDURE ON OBJECTIONS

If Plaintiff seeks review by the District Judge of this Report and Recommendations, he may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

Plaintiff is specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**


Date:  July 23, 2015                                      _____/s/ *Elizabeth A. Preston Deavers*_____
                                                            Elizabeth A. Preston Deavers
                                                            United States Magistrate Judge